UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BOARD OF TRUSTEES OF THE
OREGON RETAIL EMPLOYEES
PENSION PLAN,

        Plaintiff,

    v.

SIGNATURE NORTHWEST LLC,
MFH AGI, LLC, MFH AVIATION, LLC,
MFH DAYTON, LLC, MFH TRAILBLAZAER
LLC, MFH 16TH STREET GARAGE LLC,

        Defendants.

Case No. 3:20-cv-02244-YY

FINDINGS AND
RECOMMENDATIONS

**FINDINGS**

Plaintiff is the Board of Trustees of the Oregon Retail Employees Pension Plan (the "Trust") and brings this action against defendants Signature Northwest LLC ("Signature NW"), MFH AGI, LLC, MFH Aviation, LLC, MFH Dayton, LLC, MFH Trailblazer LLC, MFH 16th Street Garage LLC, pursuant to § 4301(a) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1451(a), for nonpayment of withdrawal liability. Compl., ECF 1. Defendant Signature NW has not filed an Answer or otherwise appeared in this matter. On March 22, 2021, plaintiff filed a motion for order of default against defendant Signature NW. ECF 11. The remaining defendants were dismissed from this action on April 2, 2021, by a

1 – FINDINGS AND RECOMMENDATIONS

Stipulated Judgment. ECF 15. On May 6, 2021, the Clerk entered a default against defendant Signature NW. ECF 16. Plaintiff has now filed a motion for default judgment against defendant Signature NW (ECF 17), which should be GRANTED for the reasons set forth below.

## I.     Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED.R.CIV.P. 12(h)(3); *see also Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983) (recognizing that the court may *sua sponte* dismiss an action if it finds that subject matter jurisdiction is lacking).

Here, plaintiffs have brought a claim pursuant to ERISA § 4301(b), 29 U.S.C. § 1451(b). Because plaintiffs' claims arise under federal law, the court has subject matter jurisdiction.

## II.    Personal Jurisdiction

A district court "has an affirmative duty" to determine whether it has personal jurisdiction over a defendant before entering a default judgment. *In re Tuli,* 172 F.3d 707, 712 (9th Cir. 1999). "A judgment entered without personal jurisdiction over the parties is void." *Id*. The Supreme Court has recognized two types of personal jurisdiction: general, or "all-purpose," jurisdiction, and specific jurisdiction. *Daimler AG v. Bauman,* 571 U.S. 117, 127–28, 132 (2014). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 137 (citation omitted). "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* "These bases afford plaintiffs recourse to at least one clear and

2 – FINDINGS AND RECOMMENDATIONS

certain forum in which a corporate defendant may be sued on any and all claims." *Id.* Additionally, 29 U.S.C. § 1132(e)(2), which governs ERISA claims, provides:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Here, plaintiff administers the Trust in Washington County, Oregon. *See* Barlow Decl. 2, ECF 12. Accordingly, personal jurisdiction over defendant Signature NW exists in this case. *See Daimler AG*, 571 U.S. at 137.

**III.   Service of Process**

Before entering a default judgment, the court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the West v. RMA Lumber Inc.*, No. C 07-06469 JSW, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008). "[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has . . . waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138–39 (9th Cir. 2007).

Under Federal Rule of Civil Procedure 4(h)(1)(B), service may be made on a corporation by delivering a copy of the summons and complaint to an agent authorized by law to receive service of process. Plaintiff has filed a declaration of service showing that on January 5, 2021, a process server personally served the clerk on duty in the office of defendant Signature NW's registered agent, Derick Lohrey. Decl. Service, ECF 10. Thus, plaintiff has established that the service of process in this case is adequate.

**IV.   Plaintiff's Claim**

Plaintiff has brought this action pursuant to ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), seeking payment from defendant Signature NW for its assessed withdrawal

3 – FINDINGS AND RECOMMENDATIONS

liability. ERISA § 4219(b)(2)(A) provides that within 90 days of the initial notification of the assessed withdrawal liability and demand for payment, the employer may contest the assessed amount, identify inaccuracies in the determination of the amount assessed, and provide additional relevant information to the plan sponsor. 29 U.S.C. § 1399(b)(2)(A). ERISA § 4221(a)(1) provides that any dispute between an employer and the plan sponsor concerning the assessed withdrawal liability must be resolved through arbitration. 29 U.S.C. § 1401(a)(1). Under ERISA § 4221(b)(1), if the employer fails to contest the assessed withdrawal liability within 90 days of receipt of the demand, the employer loses the right to request arbitration and the withdrawal liability payments become due and owing according to the schedule provided by the plan sponsor. 29 U.S.C. § 1401(b)(1). Specifically, the statute provides:

> (1) If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under section 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(b)(1).

Additionally, ERISA provides that if the employer fails to submit its withdrawal liability payments in accordance with the plan's payment schedule, the plan may require the employer to cure its failure to pay within 60 days. ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A). Upon the termination of the 60 days, if the employer has not paid, then the employer is in "default" and the *entire* amount of withdrawal liability is immediately due and owing. Specifically, 29 U.S.C. § 1399(c)(5)(A) provides:

4 – FINDINGS AND RECOMMENDATIONS

>(5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term 'default' means—
>
>(A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure[.]

Here, plaintiff has established that Signature NW made a complete withdrawal from the Trust in 2019 for purposes of ERISA § 4203(a)(1), 29 U.S.C. § 1383(a)(1), and stopped submitting payments at the same time. Piro Decl. 2, ECF 18. Following the withdrawal by defendant Signature NW, the Trust's actuaries calculated Signature NW's withdrawal liability to be $996,803.00. *Id*. On May 23, 2020, the Trust notified Signature NW in writing of its withdrawal liability assessment. Mot. 2, ECF 17. Defendant Signature NW did not request arbitration and did not submit any payment. Piro Decl. 2, ECF 18. On July 16, 2020, a follow-up demand letter was served on Signature NW's registered agent, Derek Lohrey. *Id*. at Ex. B. On October 15, 2020, the Trust notified Signature NW that its payment was due within 60 days to avoid default pursuant to ERISA § 4219(c)(5), 29 U.S.C. § 1399(c)(5)(A). Mot. 2, ECF 17. More than 60 days have passed since the October 15, 2020 letter, and defendant Signature NW has made no payments. Mot. 2, ECF 17; Piro Decl. 2, ECF 18. On April 2, 2021, the Clerk entered a default against defendant Signature NW. ECF 16. Plaintiff therefore claims that defendant Signature NW owes an assessed withdrawal liability of $996,803.00 to the Trust. Mot. 6, ECF 17; *see* 29 U.S.C. § 1399(c)(5)(A). Plaintiff also seeks liquidated damages, interest, attorney's fees, and costs pursuant to ERISA provisions and the terms of the Trust Agreement Governing the Oregon Retail Employees Pension Trust ("Trust Agreement"). Mot. 3, ECF 17.

V.     *Eitel* Analysis

The district court's decision whether to enter a default judgment is a discretionary one. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion, the court considers the following factors under *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. Each of the *Eitel* factors is discussed below.

A.     **Factor One: Possibility of Prejudice to Plaintiff**

In assessing this factor, courts have considered whether a plaintiff would be without recourse for recovery if the motion for default judgment is not granted. *See, e.g., J & J Sports Prods., Inc. v. Cardoze*, No. C 09–05683 WHA, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010); *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, prior to filing this lawsuit, the Trust notified defendant Signature NW in writing of its withdrawal liability assessment in May 2020 and served a follow-up letter on its registered agent in July 2020. Piro Decl. Ex. A, ECF 18. By letter dated October 15, 2020, the Trust notified defendant Signature NW that its payment due on August 20, 2020 had not been received and that payment had to be made within 60 days to avoid a default pursuant to ERISA § 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A). Compl. 3, ECF 1. More than 60 days have passed since the October 15, 2020 letter, and defendant Signature NW has not made any payments. Piro Decl. 2, ECF 18. As plaintiff's efforts failed to result in the relief that it seeks, plaintiff had no recourse for recovery other than to file this action.

### B. Factors Two and Three: Merits of Claims and Sufficiency of Complaint

Upon entry of default, this court must take the well-pleaded factual allegations of the complaint as true. *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("In reviewing a default judgment, this court must take the well-pleaded factual allegations of [the complaint] as true.").

Here, plaintiff's well-pleaded complaint alleges facts establishing defendant Signature NW's withdrawal liability to the Trust. It is clear from plaintiff's documents that during the 2019 plan year, defendant Signature NW had a complete withdrawal from the Trust for the purposes of ERISA § 4203(a)(1), 29 U.S.C. § 1383(a)(1), and, as a result of that withdrawal, defendant Signature NW incurred a withdrawal liability of $996,803.00. Piro Decl. 2, ECF 18. Plaintiff has also stated a claim for liquidated damages, interest, attorney's fees, and costs pursuant to 29 U.S.C. § 1132(g)(2) and the terms of the Trust Agreement. Piro Decl. Ex. C, ECF 18. Thus, plaintiff has established the merits of its claims.

### C. Fourth Factor: Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of [d]efendant's conduct." *PepsiCo*, 238 F.Supp.2d at 1176–77; *see also J & J Sports*, 2010 WL 2757106, at *5 ("a large sum of money at stake would disfavor default damages," such as a request for $114,200 in damages); *Board of Trustees of the Sheet Metal Workers v. Vigil*, No. C 07-01508 WHA, 2007 WL 3239281, at *2 (N.D. Cal. Nov. 1, 2007) ("[D]efault judgment is disfavored if there were a large sum of money involved").

7 – FINDINGS AND RECOMMENDATIONS

Here, the sum sought is not small, but the amount is well supported by the evidence that plaintiff has presented.

D.  **Fifth Factor: Possibility of Dispute Over Material Facts**

In addressing the fifth factor, the court considers the possibility that there is a dispute concerning material facts. As mentioned above, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, "[t]he fifth factor . . . weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Joe Hand Prods. v. Holmes*, No. 2:12–cv–00535–SU, 2015 WL 5144297, at *7 (D. Or. Aug. 31, 2015). Otherwise stated, "[b]ecause all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists." *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005).

As noted, the complaint is well-pleaded, and plaintiff has submitted the Trust Agreement and other supporting documents establishing the merits of its claims. Thus, the possibility that there is a dispute over material facts is low.

E.  **Sixth Factor: Excusable Neglect**

The sixth factor pertains to the possibility that the default resulted from excusable neglect. As noted, before filing suit, plaintiff sent an initial demand letter to defendant Signature NW on May 23, 2020, and sent further demands on July 16, 2020, and October 15, 2020, requesting that defendant Signature NW cure its default within 60 days. Barlow Decl. Ex. A, ECF 19; Piro Decl. 2, ECF 18. Thus, defendant had notice of this lawsuit, in addition to proper service discussed above. There is no indication of excusable neglect.

### F. Policy Favoring Decision on the Merits

Factor seven is "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits," specifically the policy that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action." *Joe Hand Promotions, Inc. v. Machuca*, No. 2:13-cv-1228 GEB KJN, 2014 WL 1330749, at *6 (E.D. Cal. Mar. 31, 2014). Where a defendant has failed to answer a complaint, it "makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Rule 55 allows the court to terminate a case before hearing the merits when a defendant fails to defend an action. FED.R.CIV.P. 55. "Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment." *PepsiCo,* 238 F. Supp. 2d at 1177 (internal quotation omitted).

Here, a decision on the merits is impossible because defendant Signature NW has failed to appear, plead, or defend this action. Additionally, all other factors weigh in favor of a default judgment. Therefore, the seventh factor is not dispositive and does not preclude the court from entering a default judgment against defendant.

## VI. Damages

While this court assumes the facts in the complaint are true, "neither the default nor the allegation in the complaint can establish the amount of damages." *Lasheen v. Embassy of the Arab Republic of Egypt*, 625 F. App'x. 338, 341 (9th Cir. 2015) (cited pursuant to Ninth Circuit Rule 36-3). Before the court can enter a default judgment for a sum that is uncertain, the plaintiff must prove damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 916-17 (9th Cir. 1987).

In an action for collection of outstanding withdrawal liability, ERISA § 4301(b) provides

that the withdrawal liability shall be treated as a delinquent contribution. 29 U.S.C. § 1451(b). Under ERISA § 502(g)(2), in actions for the collection of unpaid contributions, the plan shall be awarded (1) the unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages as provided by the plan (not to exceed 20% of the unpaid contributions); and (4) reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2).

Additionally, Amendment No. 1 to the Trust Agreement provides that in a suit for the collection of delinquent contributions, liquidated damages shall be assessed at 20% of the outstanding amount of contributions due and interest shall be assessed at 12% per annum from the date the contributions were due until the contributions are paid. Piro Decl. 3, ECF 18. The Trust Agreement also provides for the recovery of attorney fees and costs. *Id*. at Ex. C.

Plaintiff has established damages. Again, defendant Signature NW's failed to submit payments according to the withdrawal liability schedule and failed to cure its default. Mot. 6, ECF 17. Plaintiff submitted a withdrawal liability calculation prepared by the Trust's actuaries that shows the assessed withdrawal liability for Signature NW is $996,803.00. Barlow Decl. Ex. A, ECF 19. Plaintiff seeks liquidated damages of $199,360.60 (20% of $966,803.00) and interest of $51,123.70[1], calculated from the date of default, December 14, 2020, to June 2, 2021.[2] Those sums are also correct and due.

Plaintiff seeks attorney's fees of $1,574.50. Attorney's fees are authorized by 29 U.S.C. § 1132(g)(2), and the terms of the Trust Agreement provide that in a suit for delinquent

---

[1] It is unclear how this interest amount was calculated. Nevertheless, it is slightly less than 12% interest, whether it is calculated by simple or compound method, on $966.803.00 for 170 days from December 14, 2020, to June 2, 2021.

[2] This date appears to roughly correspond to the date on which plaintiff filed its motion for default judgment, June 4, 2021. *See* ECF 17.

10 – FINDINGS AND RECOMMENDATIONS

contributions, the court shall award the Trust reasonable attorney fees and costs of collection. Piro Decl. Ex. C, ECF 18. Generally, attorney's fees are calculated using the lodestar method, i.e., by multiplying the number of hours worked by the reasonable hourly rate. *See Perdue v. Kenny A.*, 559 U.S. 542, 551 (2010) (holding "the lodestar approach" is "the guiding light" when determining reasonable fees). In determining the "reasonable hourly rate to use for attorneys and paralegals[,]" the court looks to the "prevailing market rates in the relevant community." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citations and internal quotation marks omitted). The court also excludes hours "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The party seeking fees bears "the burden of documenting the appropriate hours expended in the litigation, and [is] required to submit evidence in support of those hours worked." *United Steelworkers of Am. v. Ret. Income Plan For Hourly-rated Emps. Of Asarco, Inc.*, 512 F.3d 555, 565 (9th Cir. 2008) (quotations omitted).

The court looks to the "prevailing market rates in the relevant community" to determine reasonable hourly rates. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community "is one in which the district court sits." *Davis v. Mason County*, 927 F.2d 1473, 1488 (9th Cir. 1991). This court uses the most recent Oregon State Bar Economic Survey as a benchmark for comparing an attorney's billable rate with the fee customarily charged in the locality. *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1244 (D. Or. 2013); *see also Copeland-Turner v. Wells Fargo Bank, N.A.*, No. 11-cv-37-HZ, 2012 WL 92957, at *2 (D. Or. Jan. 11, 2012) ("Judges in the District of Oregon use the Oregon State Bar Economic Survey . . . as a benchmark for assessing the reasonableness of hourly billing

11 – FINDINGS AND RECOMMENDATIONS

rates."). The Economic Survey sets forth rates charged by Oregon attorneys in the relevant year, including rates specific to communities such as Portland.

Plaintiff's counsel, David Barlow, seeks an hourly rate of $335 for 4.7 hours of work performed between January 20, 2021, and May 19, 2021. Barlow Decl. Ex. C, ECF 19. Barlow has submitted an itemized list of the work that he performed on this case and the time spent on each task. *Id*. The work does not appear excessive or duplicative. Barlow, who works at a firm in Seattle, Washington, has been licensed to practice law for at least 30 years. The median rate for Portland attorneys with 30 or more years of experience is $425. *See* OREGON STATE BAR, 2017 ECONOMIC SURVEY 39 tbl.36 (2017). Barlow's hourly rate of $335, which is under the median for Portland attorneys with his level of experience, is reasonable.

Plaintiff also seeks costs of $527, specifically, $402 for the filing fee and $125 for the service fee. Barlow Decl. Ex. B, ECF 19. "Unless a federal statute, these rules or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." FED.R.CIV.P. 54(d)(1). "Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party, and a district court has limited discretion to deny fees under the rule." *Goldberg v. Pac. Indem. Co.*, 627 F.3d 752, 758 (9th Cir. 2010). Thus, plaintiff is entitled to $527 in costs.

Because plaintiff has proven its damages in accordance with ERISA § 4301(b), 29 U.S.C. § 1451(b), and the Trust Agreement, plaintiff may therefore recover the damages they seek on their claim for unpaid withdrawal liability. *See Pension Tr. Fund for Operating Engineers v. Dalecon, Inc.*, No. C 11-02851 LB, 2014 WL 1007274, at *16-17 (N.D. Cal. Mar. 12, 2014) (granting the plaintiff summary judgment and finding the defendant liable for the assessed withdrawal liability, interest, liquidated damages, and attorneys' fees and costs).

## RECOMMENDATIONS

Plaintiff's Motion for Default Judgment (ECF 17) should be GRANTED, and judgment should be issued in the amount of $996,803.00 plus liquidated damages of $199,360.60, interest of $51,123.70, attorney's fees of $1,574.50, and $527 in costs.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, October 28, 2021. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED  October 7, 2021.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge